CONTINENTAL ILLINOIS NAT. BANK & TRUST CO. v. UNITED STATES.

No. 45187.

Court of Claims.
June 3, 1946.

ceed, which was received by the contractor on July 21, 1932. Due to delays and change orders the time for completion was extended 267 days.

The contract provided for the wrecking of certain old buildings on the site of the project and the construction of two large buildings of granite and limestone with structural steel framework. The main building was to contain the post office, court room and various office rooms; the other, known as the repair building, was to contain quarters for the repair of mail trucks, the heating plant and other mechanical devices.

The N. P. Severin Company was a partnership composed of Alfred N. and Nils P. Severin. Both partners died after the suit was filed and the plaintiff was duly authorized to continue to prosecute this suit and to receive any and all money and proceeds resulting therefrom.

The N. P. Severin Company will hereinafter be referred to as the contractor.

The plaintiff alleges that during the progress of the work the contractor was compelled to incur increased costs and was damaged by four delays which were the fault of the defendant. These are divided into subheads as follows:

1. Caisson delays.
2. Repair building change.
3. Tile change.
4. Rifle range change.

### Caisson Delays

Both buildings were to be supported by concrete pillars placed in excavations made for that purpose. The specifications named the depths of such excavations, but stipulated that after such depths should be reached the construction engineer could require test borings to determine whether or not it was necessary to make the excavations deeper and provided that in such event additional compensation would be allowed.

The defendant ordered that 100 of the 136 excavations for caissons to support the main building be continued to greater depths than indicated on the drawings, and similar directions were given in connection with 24 of the 48 excavations for caissons

Herman J. Galloway, of Washington, D. C. (King & King, of Washington, D. C., on the brief), for plaintiff.

Currell Vance, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and JONES, WHITAKER, LITTLETON, and MADDEN, Judges.

JONES, Judge.

The N. P. Severin Company under contract with defendant constructed the Post Office and Court House at Minneapolis, Minnesota. The contract price was $2,118,900. Work was to be completed within 720 calendar days after notice to pro-

in the repair building. Following other correspondence the defendant's construction engineer on April 18, 1933, in a letter advised the contractor that payment for such additional work would be upon a cost plus basis with ten percent for overhead and ten percent for profit and liability insurance.

The contractor submitted a claim for additional work on the main building in the total sum of $19,595 and asked 42 days' extension of time required for the performance of this work. It submitted a bill of $5,887 and asked 14 days' extension of time in connection with the repair building.

On June 24, 1933, the defendant's supervising architect took exception to certain items, including equipment rental, hoisting engineer service and field force expenses totaling $1,680. In commenting on these items such architect made the following statement: "These charges are based on an estimated 6 weeks' delay in completion of the building, and as this delay is indefinite and undetermined it should be handled as a claim only when it has actually been established as to the number of days' delay that the change in the foundation has occasioned."

He also took exception to the equipment rental prices submitted by the subcontractor for jackhammers, breakers, clamshells and trucks, on the ground that these prices were in excess of the amount that had been paid for similar equipment on other projects.

Considerable correspondence followed between the contractor and the supervising architect. Finally in the latter part of September 1933 Mr. Lund, defendant's Assistant Chief Engineer and Estimator, visited the contractor's office in Minneapolis and in a conference with the contractor's superintendent, project manager, subcontractor and others went over the two bills submitted by the contractor for excavation work.

Subsequent to this conference the contractor on September 29, 1933, wrote the Supervising Architect as follows:

"On May 11th, 1933, we submitted to you claim in the sum of $19,595.00 for carrying down certain caissons to depths designated by the Construction Engineer which were greater than the depths called for in the contract drawings.

"In accordance with conference with Mr. Lund of your Department, we hereby revise the amount of our claim to $17,813.00, and request an extension of 42 days to the contract time.

"This claim covers the additional work in the caissons in the Main Building only. Change in caissons in Repair Building is being covered by a separate letter."

On the same date the contractor wrote an identical letter in connection with the repair building except that claim was reduced from $5,887 to $5,318 and an extension of time of 14 days was requested.

On October 3, 1933, the Assistant Secretary of the Treasury wrote defendant's construction engineer a letter authorizing the payment of $23,131 for the additional caisson work. The testimony is somewhat conflicting as to just what items were discussed at the conference in September 1933, but it was agreed by witnesses on both sides that temporary heating was not included and was to be left for later determination.

The plaintiff strongly insists that equipment rental, hoisting engineer service and field force expense were not included in the terms of the settlement and points to the letter of the Supervising Architect dated June 24, 1933, quoted above, as bearing out this interpretation. However, in view of the fact that the contractor in its letter of September 29, 1933, revised its claim and the full amount of the revised claim was paid, and in the light of the further fact that in filing its claim for extra payment the contractor confined such claim to the cost of the temporary heating which was concededly not within the terms of the settlement, we think plaintiff is not entitled to recover any additional amount for the other items indicated.

### Repair Building Change

After the commencement of the contract work the defendant determined to make extensive changes in the repair building in order to afford additional storage space for handling mail trucks, bags and other post office equipment. The changes affected the

building from the foundation to the roof, including floor slabs, footings, caissons, and the roof itself.

On January 30, 1933, the construction engineer advised the contractor's superintendent to cease all activity that would be affected by the proposed additional construction in the repair building; that the architects were proceeding with the necessary drawings and that extension of time and adjustment would be made in accordance with the contract. It was necessary to consult the Post Office Department and to submit the drawings for its approval and then submit the drawings to the contractor for a proposal covering the work involved. On April 7, 1933, the contractor protested the delay that was being caused.

The necessary drawings were sent to the construction engineer on April 24, 1933, and an itemized proposal was requested. On May 13 the contractor submitted an itemized proposal totaling $48,660 and limited acceptance to not later than June 5. The defendant wired that it could not make the decision by June 5, but directed the contractor to proceed with the work, the price to be determined later, but not to exceed the amount specified in the contractor's bid. On June 8 the contractor wired that the delays were conflicting with rising prices and requested action by Friday noon. No reply. On June 16 the contractor telegraphed the Assistant Secretary of the Treasury protesting the price and insisting upon a new price of $49,800 on account of delays. Following this the contractor sent repeated wires to the Assistant Secretary of the Treasury protesting rising prices and insisting that this would make an upward revision necessary. Finally it wired saying that the subcontractors would not proceed on the basis of uncertain prices and that it must have a definite figure. The Assistant Secretary of the Treasury replied that the Government was not concerned with the contractor's arrangement with the subcontractors.

At one of the conferences in September 1933 between Mr. Lund and representatives of the contractor the various items were considered and the parties agreed to the sum of $45,287 as reasonable for the work involved. This sum included ten percent for overhead and ten percent profit. An extension of 45 days' time was granted.

## Glazed Tile

The specifications called for clay tile produced by at least two firings.

On June 23 the contractor submitted for approval of the local architects hollow tile which did not meet the reqirements of the contract specifications. The local architects sent these to the Supervising Architect saying they met their approval and recommending approval by the Supervising Architect. The Supervising Architect rejected the samples. Then followed considerable correspondence during which other samples were forwarded and rejected. It became apparent during the correspondence that the tile specified was not a standard product obtainable in the open market and would require special construction. Finally on November 22 the local architects advised the Supervising Architect that the commercial grade glazed hollow tile complied with their original specifications and with the samples approved by them as satisfactory and should be used in the building. They also advised that the contractor in bidding for the work did not know that the specifications had been changed and that a special or unprocurable tile was specified and that it had figured on using the commercial grade tile. Finally the Supervising Architect agreed to permit the use of commercial grade tile and reduced the amount of the contractor's proposal in the sum of $150. An extension of 60 days' time was granted.

## Rifle Range

On December 7, 1933, the defendant requested the contractor to furnish a proposal for installing revised rifle range equipment. On January 26, 1934, the contractor submitted a proposal in the total sum of $1,164.52 and on April 19, following conferences, the contractor submitted a revised proposal totaling $975.11 and asked for early consideration.

Approval of the contractor's proposal was withheld pending further consideration by the Post Office Department for whose service this range was being constructed. On November 16, 1934, the contractor

wrote the defendant that the main building was virtually completed with the exception of the rifle range, and urged action upon its proposal. On December 4 the defendant requested a further proposal. The additional proposal was submitted on December 11, 1934, together with a request for an extension of time for the installation of the work. The defendant finally accepted the contractor's proposal on December 27, 1934. An extension of 30 days was eventually granted. In granting this extension the defendant admits many adverse conditions which it acknowledged were not the fault of the contractor.

The only item on which plaintiff is entitled to recover is the item of temporary heating. Clearly it is entitled to recover on this item. It is true that the contract provided that heat should be furnished by the contractor, but in connection with the change orders it was agreed and stipulated that all items of extra cost should be included and in addition thereto that ten percent should be added for overhead, plus ten percent for profit. It was agreed by the representatives of both parties who took part in the various conferences that the matter of the amount of extra temporary heat caused by the changes and extensions of time which were attributable to the defendant could not be determined and settled at that time, and that they should be left for later determination. This is made very clear not only in the correspondence but also in the testimony of the various witnesses.

The plaintiff submitted a claim for this item in the total sum of $15,190.59. However, the amount attributable to the defendant is the sum of $8,829.05 which plaintiff is entitled to recover. We have limited the overhead to five percent since that was the amount allowed in the rifle range settlement which was handled exclusively by subcontractors. Temporary heating was also furnished exclusively through subcontractors.

Plaintiff also claims additional sums for overhead expenses, but since in the settlement of the various disputed claims which we have discussed an allowance of ten percent was made for overhead costs, and since these changes are the only ones involved in the claim presented, we do not think plaintiff is entitled to further recovery on these items.

Judgment is rendered for plaintiff in the sum of $8,829.05. It is so ordered.

WHITAKER and LITTLETON, Judges, and WHALEY, Chief Justice, concur.

MADDEN, Judge, took no part in the decision of this case.